UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:14-cv-00066-FDW-DSC

| | | |
|---|---|---|
| GREGORY ARTHUR REID JR., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| CHARLOTTE-MECKLENBURG BOARD | ) | |
| OF EDUCATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

THIS MATTER is before the Court on two post-trial motions: (1) Plaintiff's "Motion for Transcripts at the Government's Expense" (Doc. No. 83); and (2) Plaintiff's "Motion to Alter or Amend Judgment; New Trial . . . ." (Doc. No. 84). In addition to the responses and replies to these motions, the Court permitted Plaintiff and Defendant to file a supplemental brief following the Court's supplemental memorandum opinion issued post-trial that explained the Court's reasons for its summary judgment rulings. Accordingly, these motions have been fully briefed and are ripe for review. For the reasons that follow, the Court DENIES without prejudice Plaintiff's Motion for Transcripts and DENIES Plaintiff's Motion to Alter or Amend Judgment and for a New Trial.

## I.    BACKGROUND

Plaintiff Greg Reid, who appears *pro se* in this matter, filed this action against Defendant Charlotte-Mecklenburg Board of Education alleging multiple causes of action for discrimination and retaliation. Plaintiff holds a Master's Degree in Special Education: General Curriculum from the University of North Carolina at Charlotte, which he obtained in June 2012. While he was completing his Master's Degree, Plaintiff obtained employment on an interim basis with

Defendant in January 2012 as an Exceptional Children's ("EC") teacher at South Mecklenburg High School ("South Meck"), where he was supervised by the school's principal Dr. Maureen Furr. Plaintiff obtained this position after applying for over 150 positions using Defendant's online application system.

While employed at South Meck, Plaintiff served as an inclusion teacher in biology and English classes, where he assisted students in the EC program within their regular classrooms while the primary teacher taught the lesson. The terms of Plaintiff's interim, end-of-year contract with Defendant provided that his employment would naturally terminate at the end of the 2011-2012[1] school year. Plaintiff contends he performed well in this position and submitted to the Court classroom observations indicating some positive feedback. Defendant disagrees, pointing to several conflicts involving Plaintiff and the lead teachers with whom he worked, disagreements between Plaintiff and the principal, and incidents where Plaintiff had difficulty managing student behavior, which occasionally escalated into arguments between Plaintiff and his students.

As contemplated by the contract, Plaintiff's employment ended at the end of the 2011-2012 school year, and he was not offered another position at South Meck for the next school year. Between 2012 and 2013, Plaintiff applied for approximately 260-300[2] vacant positions with Defendant via its online application system. Defendant did not hire Plaintiff for any of these positions. Plaintiff, however, remained in Defendant's substitute teacher pool of candidates. During the relevant time period for which Defendant sought damages, Plaintiff obtained other

---

[1] The Court notes that its supplemental order on summary judgment contained a typographical error and erroneously referred to the contract as covering the "2012-2013" school year. (Doc. No. 2, p. 2). The parties agree that the interim contract for Plaintiff's position with South Meck covered the *2011-2012* school year, specifically the second half of that school year from January 2012 to June 2012.

[2] The parties disagree as to the precise number but generally agree it falls within this range.

teaching positions in at least two other schools, a charter school and an elementary school with Union County Public Schools.[3]

On May 5, 2013, Plaintiff emailed Defendant's Employee Relations Department about his concerns of discrimination for not being hired for the hundreds of jobs to which he applied. In response, Janet Hamilton, Defendant's Executive Director of Employee Relations, asked John Brady, a human resources manager, to set up a meeting with Plaintiff. On May 7, 2013, Plaintiff filed a formal charge of discrimination and retaliation against Defendant with the Equal Employment Opportunity Commission ("EEOC"). On May 8, 2013, Plaintiff met for more than an hour with representatives from Defendant's Employee Relations Department, including Mr. Brady and Willis Young, who both testified at trial. Plaintiff did not inform them of his EEOC filing until the end of the meeting. The EEOC ultimately issued a Right to Sue Letter, and this suit subsequently followed.

Plaintiff's Second Amended Complaint asserted seven causes of action against Defendant: (1) racial discrimination in failing to hire him for a position in August 2012 at South Meck; (2) racial and gender discrimination for failing to hire him for a position in 2012 at Crestdale Middle School; (3) retaliation for not allowing Plaintiff to participate in Defendant's internal grievance process in May 2013 after he had filed a complaint with the Equal Employment Opportunity Commission ("EEOC"); (4) retaliation for Plaintiff's filing of an EEOC charge by not hiring him in June 2013 at Northeast Middle School; (5) gender discrimination and retaliation for not hiring

---

[3] During trial, the parties disputed whether Plaintiff resigned or was terminated from his position at the charter school. As to the other position, Plaintiff testified that Union County Public Schools did not renew his contract because of inadequate performance. Currently, Plaintiff has a case pending before the undersigned, <u>Reid v. Union County Board of Education</u>, 3:16-cv-4551 (W.D.N.C.), which involves allegations of discrimination against Union County Public Schools.

Plaintiff in August 2013 at South Meck; (6) race and gender discrimination for not hiring Plaintiff in September 2013 at Cochrane Collegiate Academy; and (7) race discrimination for not hiring Plaintiff in September 2013 at Rocky River High School.  (Doc. No. 27).

When he filed his complaint, Plaintiff also moved to proceed *in forma pauperis* ("IFP") in this matter.  (Doc. No. 2).  After reviewing the application, including the representations as to Plaintiff's then-current job situation and financial position, the Court denied Plaintiff's motion but allowed him to pay the filing fee in monthly installments.  (Doc. No. 3).

The parties participated in the Court's Pro Se Settlement Assistance Program, which was unsuccessful, and subsequently proceeded with discovery.  Upon motion by Defendant, the Court dismissed count one of Plaintiff's Second Amended Complaint for lack of subject matter jurisdiction for failure to exhaust his administrative remedies.  (Doc. No. 49).

Defendant submitted a motion for summary judgment (Doc. No. 50), which the parties fully briefed.[4]  The parties presented oral arguments at a hearing on November 3, 2015.  During the hearing, Plaintiff presented what he considered to be demonstrative summary evidence supporting his claim.  Although the evidence and argument therein had not been previously submitted with Plaintiff's written submissions to the Court, the Court considered the pleading.  (Doc. No. 68).  At the conclusion of the hearing, the Court issued an oral ruling denying summary judgment for Defendant on Plaintiff's claim for retaliation related to the internal grievance process and took the remaining matters under advisement.  On November 12, 2015, the Court issued a concise, written order reiterating its denial of summary judgment on the retaliation claim and

---

[4] In accordance with <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), the Court advised Plaintiff of the burden he carried in responding to Defendant's motion and allowed Plaintiff additional time from the original response deadline to submit his response and any supporting evidence, including exhibits, affidavits, or sworn statements.  (Doc. No. 59).  Pursuant to the deadline set in that order, Plaintiff timely responded.  (Doc. No. 61).

granting summary judgment in part for Defendant on all of Plaintiff's remaining claims of discrimination and retaliation. (Doc. No. 69). Because the jury trial date was quickly approaching, the Court issued an abbreviated order, noting that the Court would follow up to provide more detailed reasoning in a subsequent memorandum opinion.

In the same order, the Court also set a status conference to discuss upcoming trial matters and pretrial submissions in light of Plaintiff's *pro se* status. (Doc. No. 69). On November 17, 2015, the Court conducted a status conference, and the parties elected to also engage in an informal judicial settlement conference that lasted several hours. The judicial settlement conference did not result in an agreement between the parties.

Unbeknownst to the Court, on the morning of and prior to the status conference, Plaintiff had filed a Motion for Continuance with the Clerk's office. (Doc. No. 70). The Clerk did not electronically docket the motion until the following day, which is when the Court learned of it. Despite filing the motion prior to his Court appearance, Plaintiff never mentioned the motion to continue nor did he allude to the fact he did not intend to proceed to trial as scheduled during the numerous times the parties discussed the trial date with the Court during the status conference and the judicial settlement conference. The Court denied Plaintiff's request for a continuance, noting that it would entertain a renewed request if Plaintiff could further substantiate his basis for a continuance with a medical opinion. (Doc. No. 71).

On November 24, 2015, Plaintiff asked the Court to reconsider its ruling on the motion to continue based on newly-submitted documentation from Plaintiff's medical provider William Kreft, PA-C, providing a written opinion dated November 23, 2015, as to Plaintiff being "incapable of participating in a legal/court proceeding." (Doc. No. 72, p. 6). The Court scheduled

an evidentiary hearing on this motion on December 7, 2015, the same day as trial was calendared to begin.

During the hearing, Mr. Kreft testified about several medications prescribed to by Plaintiff for various health issues, including anxiety, and also opined that he wrote the November 23, 2015, letter as to Plaintiff's inability to proceed to trial "because I thought [Mr. Reid] was not functioning at [his] highest level." (Hr'g Tr. 12, December 7, 2015.) Mr. Kreft also agreed with Plaintiff's statement that based on Plaintiff's current situation, "additional time, not specifying how much time, would better assist me with being able to effectively participate . . . in these proceedings." Id. Mr. Kreft admitted on cross-examination that other issues besides litigation affected Plaintiff's anxiety, including his employment situation, financial stresses related to being unemployed, and his frustration with his inability to be in a teaching environment working with children. Id. at 19. Also on cross-examination, Mr. Kreft opined that he could not estimate a time frame as to when Plaintiff would be prepared to proceed to trial, but that Plaintiff would be in a better position if he pursued and received psychiatric help. (Id. p. 18). Mr. Kreft indicated that it would take "months" for Plaintiff to obtain an appointment with a psychiatrist. Id. According to Mr. Kreft, if the psychiatrist were to adjust Plaintiff's meds, it would help him with his anxiety, resulting in improved symptoms in a "matter of weeks" and "not very long after that time." (Id. at pp. 18, 19).

Most significantly, Mr. Kreft testified that during the hearing, Plaintiff "seems to be doing pretty well here. I think Greg has the capacity to pull himself together at times pretty well . . . . .[H]e seems to be improved from when I saw him on [November] 23rd." (Id. at 21). In addition to this evidence, the Court heard sworn testimony from Plaintiff and argument from the parties. Plaintiff specifically requested a continuance of a "few weeks" to "get his health together." This

was not Plaintiff's sole basis for his request, as he also asserted he had not prepared for trial because of other school obligations and that he needed additional time to familiarize himself with the rules of evidence and procedure. The Court denied Plaintiff's renewed request for a continuance via an oral ruling, and trial began the same day.

This matter was tried before a jury over the course of three-and-a-half days. Plaintiff presented exhibits, as well as testimony from himself and his mother. In addition to exhibits, Defendant provided testimony from three witnesses: Janet Hamilton, Defendant's executive director of employee relations; John Brady, Defendant's employee relations manager; and Willis Young, who had served as a human resources team leader for Defendant during the relevant time period.

During the course of the trial, Plaintiff appeared prepared to present exhibits to be admitted, examine witnesses, and lodge objections.[5] His courtroom conduct was at times impolite to defense counsel and the Court, although this mostly occurred outside the presence of the jury or in a sidebar. Additionally, Plaintiff was late to Court on at least two occasions, and, upon inquiry from the Court, Plaintiff's proffered explanations proved to be inconsistent and not credible.[6]

---

[5] Plaintiff's instant motion confronts his behavior during trial and also criticizes the conduct of others. Absent those allegations, the Court would not typically comment on counsel's or a party's conduct during trial. In light of the implications in Plaintiff's motion, the Court provides a short, summary background regarding Plaintiff's demeanor and more fully discusses the alleged misconduct in addressing Plaintiff's arguments below.

[6] On the first day, Plaintiff was fifteen (15) minutes late to the afternoon session of Court. He informed the Court that he was at the courthouse on time, but spent fifteen minutes at the front entrance because of a malfunction with the metal detector used by the marshals for security. To the contrary, a marshal who was providing security at the courthouse entrance testified that Plaintiff did not arrive at the courthouse until 1:40 p.m., ten minutes after Court was the have convened. The marshal also indicated that it took no more than three minutes for Plaintiff to be scanned three times and cleared to enter. The courtroom is not far down the hallway from the courthouse entrance. The Court found Plaintiff's explanation not credible and cautioned him that further tardiness could result in a fine. On another occasion, Plaintiff emailed the Clerk's office to inform them he was running late for court because of medical condition. Only a few minutes after sending that email, Plaintiff called the Clerk's office and told a Deputy Clerk on duty that he was running late because of traffic. Plaintiff arrived to Court eight minutes late, and argued to the Court the multiple reasons he was again not on time. Plaintiff produced an undated picture of a car on the side of the road,

Plaintiff's repeated and inexcused tardiness compelled the Court to impose sanctions. At the close of evidence, the jury deliberated approximately ten (10) minutes before returning a verdict in Defendant's favor finding no liability for retaliation. (Doc. No. 81). The Clerk entered judgment accordingly on December 31, 2015. (Doc. No. 82).

On January 6, 2016, Plaintiff requested the Court provide transcripts of all court proceedings to him at no expense. (Doc. No. 83). On January 14, 2016, Plaintiff filed a motion, pursuant to Rule 59 of the Federal Rules of Civil Procedure, to alter or amend the final judgment and, in the alternative, for a new trial. (Doc. No. 84). Defendant timely responded, and Plaintiff timely replied. (Docs. Nos. 85, 86, 89, 90). After those pleadings were filed, on February 12, 2016, the Court issued its supplemental memorandum opinion further explaining its summary judgment ruling. (Doc. No. 91). Because Plaintiff's motion to amend the judgment had been fully briefed, the Court permitted the parties to supplement their pleadings addressing any arguments pertaining to summary judgment in light of the Court's supplemental memorandum opinion. (See Text-Only Order on February 19, 2016, granting Plaintiff's Motion to Submit a Supplemental Response; Doc. No. 92). Both Plaintiff and Defendant filed supplemental briefs. (Docs. Nos. 93, 94). Accordingly, this matter is now ripe for review.

## II.    ANALYSIS

Plaintiff has moved the Court for relief pursuant to Rule 59 of the Federal Rules of Civil Procedure asking this Court to alter/amend the judgment, or in the alternative, grant him a new trial.[7] Rule 59 of the Federal Rules of Civil Procedure provides an avenue for litigants to seek a

---

but did not otherwise provide proof of an accident. The Court again found Plaintiff's excuses not credible and sanctioned Plaintiff $80 for his tardiness. To the Court's knowledge, such sanction has never been paid to the Clerk.
[7] Other than a passing reference to Rule 59(e) in the conclusion of his initial memorandum, Doc. No. 84, p. 14, Plaintiff does not identify which specific portions of Fed. R. Civ. P. 59 are applicable to his requested relief. Bearing in mind

new trial under Rule 59(a) or to alter, amend, or vacate a prior judgment under Rule 59(e).

Rule 59(a) provides that courts may grant a new trial after a jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Under this standard, "[a] new trial will be granted if (1) the verdict is against the clear weight of the evidence, or (2) is based upon evidence which is false, or (3) will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Cline v. Wal–Mart Stores, Inc., 144 F.3d 294, 301 (4th Cir. 1998) (citation and internal quotation marks omitted). In making this determination, courts may "weigh the evidence and consider the credibility of witnesses." Id. (citation omitted).

It is well-settled that a Rule 59(e) motion "may only be granted in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 378 (4th Cir. 2012) (quoting Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007)). A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to entry of judgment." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (citation omitted). Furthermore, "it is an extraordinary remedy that should be applied sparingly." Mayfield, 674 F.3d at 378 (citing EEOC v. Lockheed Martin Corp., 116 F.3d 110, 112 (4th Cir. 1997).

Bearing these principles in mind, the Court turns to Plaintiff's arguments.

**A. Motion for Transcripts**

---

that Plaintiff appears *pro se* and liberally construing his arguments, it appears to the Court that Plaintiff seeks relief under both Federal Rule of Civil Procedure 59(a) and 59(e). Accordingly, the Court considers both of these sections in addressing Plaintiff's arguments.

Prior to the deadline for filing a motion pursuant to Fed. R. Civ. P. 59, Plaintiff requested to be provided copies of all hearing and trial transcripts at no cost to Plaintiff. As a basis for his motion, Plaintiff cited, without explanation, Federal Rules of Appellate Procedure 10 and 11, Federal Rule of Civil Procedure 80, 28 U.S.C. § 753(f), and the Pro Se Procedures from the United States Court of Appeals for the Fourth Circuit. (Doc. No. 83, pp. 1-2). Although he did not specifically argue how these rules applied to his motion, Plaintiff asserted that these transcripts were necessary for him to "provide the Appellant [sic] Court with pivotal information regarding the application of relevant substantial issues of law." (Doc. No. 83, p. 4). Plaintiff's motion also represented he needed the transcripts to adequately draft post-trial motions. Id. Prior to Defendant's deadline for responding to Plaintiff's motion for transcripts and prior to the Court's ruling on the motion, Plaintiff filed his post-trial motion pursuant to Fed. R. Civ. P. 59.

Plaintiff provides no authority to support his request for transcripts in order to prepare post-trial motions, and the Court finds such relief is unwarranted here. As discussed below, Plaintiff's post-trial motion articulates several reasons to amend the judgment and/or grant him a new trial. Plaintiff's recollection of the trial and other court proceedings allowed him to present with some specificity those errors he contends occurred. Thus, his inability to purchase the transcripts or have them provided to him at no expense prior to filing post-trial motions has not harmed his ability to seek relief.

Moreover, the Court finds several authorities cited by Plaintiff to be inapplicable to the instant motion. Rules 10 and 11 of the Federal Rules of Appellate Procedure pertain to the presentation of transcripts as part of the appellate record; however, these rules do not provide a basis for the relief requested here. Similarly, Federal Rule of Civil Procedure 80 also does not

provide grounds for providing transcripts at no expense to a party.

Plaintiff also cites to 28 U.S.C. § 753(f) in his request for transcripts. This statute states that "[f]ees for transcripts furnished in other proceedings to persons permitted to appeal in forma pauperis shall also be paid by the United States if the trial judge or a circuit judge certifies that the appeal is not frivolous (but presents a substantial question)." 28 U.S.C. § 753(f). While this statute may be applicable at another stage in this litigation, it is unhelpful to Plaintiff now. He has neither been granted permission to proceed IFP nor has he filed a notice of appeal. Thus, the conditions precedent for this statute to apply are lacking. Accordingly, this motion is premature and is therefore denied without prejudice to be re-raised if Plaintiff files an appeal and if he is granted IFP status on appeal.

The Court recognizes that Plaintiff's pleadings related to the motion for transcripts contain a renewed request to be granted IFP status. Plaintiff indicates that his circumstances have changed and warrant this Court revising its original denial of his IFP petition at the outset of this case. Without addressing the merits of Plaintiff's request and alleged change circumstances, the Court denies without prejudice this request so that Plaintiff can raise it at the appropriate time in a manner that satisfies the statutory requirements and uses the requisite appellate forms. See Fed. R. App. P. 24(a)(1)(A);[8] see also 28 U.S.C. § 1915.

Because this ruling is without prejudice and in the event it is not this Court who rules on a subsequent motion for transcripts, the Court notes for the record that in order to adequately address Plaintiff's Rule 59 motion below, the Court had the benefit of referring to an unofficial, rough

---

[8] Although Plaintiff has demonstrated he is adept at legal research, the Court notes that Plaintiff may find the following website helpful in renewing his request at the appropriate time: http://www.ca4.uscourts.gov/court-forms-fees/pro-se-forms.

draft version of the transcripts in these proceedings. While the Court did not rely solely on those transcripts for its ruling below, the Court found it helpful for reference to the arguments made by Plaintiff and defense counsel, particularly where both parties did not provide specific reference to the court proceedings, testimony, or evidence. Notwithstanding these findings, the Court finds that the statutory requirements to support the provision of transcripts at no cost to Plaintiff have not yet been satisfied.

### B. Motion to Alter or Amend the Judgment and, in the alternative, for a New Trial

The gravamen of Plaintiff's Rule 59(e) motion is that the Court should amend the judgment to correct clear errors of law and prevent manifest injustice.[9] Liberally construing Plaintiff's motion, he also argues a new trial is warranted because the evidence does not support the jury's verdict and because the verdict results in a miscarriage of justice. See Cline, 144 F.3d at 301. Plaintiff's arguments in support of his Rule 59 motion are best analyzed in sequential order based on the timing of when the alleged errors occurred. Specifically, the Court has categorized his arguments into errors related to pretrial proceedings, evidentiary errors during trial, and misconduct allegations that Plaintiff contends permeated the trial and jury deliberations.

### a. Pretrial Motions

### i. Motion to Continue

Plaintiff argues this Court erred in denying his motion for a continuance. The case management order in this matter, issued on January 13, 2015, schedule the case for trial on the mixed trial term beginning November 2, 2015. (Doc. No. 36). As the trial date approached, on October 28, 2015, the Court noticed a hearing on the pending summary judgment motion for

---

[9] Plaintiff does not appear to argue an intervening change in controlling law or that he has obtained new evidence not available at trial. See Mayfield., 674 F.3d at 378.

November 3, 2015, and *sua sponte* continued the trial setting to December 7, 2015.  (Doc. No. 36, p. 1).  Additionally, the order specifically stated, "If any claims survive Defendant's motion for summary judgment, the Court will proceed with jury selection in this matter on Monday, December 7, 2015, with the trial to begin sometime thereafter depending on another case currently in a peremptory setting for docket call and jury selection during that term."  (Doc. No. 36, pp. 1-2).  On November 17, 2015, less than a month before trial, Plaintiff moved for a continuance stating that he needed additional time to prepare for trial, secure an attorney, and receive treatment for existing medical conditions.  (Doc. No. 70).  On the same day he filed the motion, Plaintiff appeared in Court for a status conference to discuss the upcoming trial.  During the status conference, the Court was unaware of the pending motion that had not yet been docketed by the Clerk's office.  Moreover, Plaintiff failed to alert the Court to his motion or otherwise mention a desire to not proceed to trial in early December.

Upon review, Plaintiff's motion provided little more than his own bare assertions to support his request to continue trial.  The Court had observed Plaintiff in Court the preceding day during the status conference and judicial settlement conference.  Plaintiff appeared prepared for the hearing and also demonstrated an acute sense of his theory of the case that he intended to present to the jury.  Accordingly, the Court promptly denied Plaintiff's motion.  (Doc. No. 71).  The Court noted that it would entertain a renewed continuance motion if Plaintiff could obtain a medical opinion to support his assertions.  (Doc. No. 71).

On November 24, 2015, less than two weeks from trial, Plaintiff renewed his motion for a continuance, requested a stay in the legal proceedings, and submitted a letter from his treating physician assistant as documentation regarding his medical conditions.  (Doc. No. 72).  On

November 30, 2015, the Court issued a notice of hearing advising the parties it would conduct an evidentiary hearing on Plaintiff's renewed motion on December 7, 2015, the same day trial was set to begin.  The Court's notice updated the parties that the previously-mentioned criminal case was no longer appearing on the December 7 docket.  In fact, the notice clearly stated at least three times that if the Court denied Plaintiff's motion to continue, trial would immediately commence upon conclusion of the hearing.  (Doc. No. 73, pp. 2-3).

During the hearing, the Court received testimony and other evidence from Plaintiff and his medical provider.  While the details of that hearing are set forth above, Plaintiff's justification for his request for additional time waffled from needing more time to learn the applicable rules of evidence and law, to needing time to adjust to new medicines, to waiting on an appointment with a psychiatrist.  The Court denied Plaintiff's motion.

Plaintiff again argues this Court arbitrarily denied his motion to continue and asserts this denial violated due process.  The Court summarily denies Plaintiff's argument that the Court's denial of a continuance violated his due process rights.  To the contrary, the Court not only allowed Plaintiff a second bite at the apple by permitting him to renew his original, unsubstantiated motion to continue, but the Court also conducted an evidentiary hearing on his renewed motion, providing Plaintiff yet another opportunity to present evidence and argument supporting his request.  Giving Plaintiff ample leeway since he appeared *pro se*, the Court allowed Plaintiff multiple occasions to be heard, contrary to Plaintiff's meritless due process arguments.

Furthermore, the Court's ruling on the motion to continue was far from "arbitrary," as Plaintiff contends.  (Doc. No. 84, p. 8).  Notably, Plaintiff does not argue he was or has ever been mentally incompetent to represent himself in these proceedings.  Plaintiff has demonstrated an

ability to conduct legal research and craft coherent arguments to support his position. Prior to the hearing on the motion to continue, Plaintiff participated in conferences with defense counsel; assisted in preparing the joint proposed pretrial order; researched and drafted proposed jury instructions, witness lists, and exhibit lists; and had witness subpoenas served. Relying on Plaintiff's demonstrated abilities during the hearing, as well as his own medical provider's testimony, the Court concluded Plaintiff appeared to be sufficiently prepared and capable to proceed to trial.

Notwithstanding the Court's ruling, in an effort to alleviate Plaintiff's concerns regarding his emotional state, the Court – during trial and particularly in the presence of the jury – intentionally provided accommodations to Plaintiff above the Court's general practices. On multiple occasions, the Court granted Plaintiff wide latitude when he needed additional time to get organized, gather documents, or compose himself after becoming emotional. In light of Plaintiff's *pro se* status, the Court also made extra effort to explain evidentiary rulings to Plaintiff, educate him on how to work through the rules of evidence (for example, explaining how to authenticate documents), and address his questions to help him understand the basis for the Court's rulings. Plaintiff has failed to show any error in the Court's denial of the motion for a continuance. Accordingly, that portion of his motion is denied.

### ii. Summary Judgment Ruling

Plaintiff also contends that he was prejudiced during trial because he did not have a written summary judgment order from this Court until after trial. During the summary judgment hearing on November 3, 2015, the Court denied summary judgment on Defendant's retaliation claim related to the internal grievance process and repeatedly explained to Plaintiff the lack of competent

evidence to support his discrimination claims. The Court then took the matter under advisement to again review the evidence submitted by Plaintiff in support of his discrimination claims, including the demonstrative exhibit he presented at the hearing. (Doc. No. 68.)

On November 12, 2015, the Court issued a condensed written order, noting that "[b]ecause of the close proximity to trial . . . the Court finds it necessary to issue this short ruling, and the Court will provide its reasoning in a memorandum opinion to follow." (Doc. No. 69). Five days after its ruling, on November 17, 2015, the Court conducted a status conference with the parties to discuss the upcoming trial and to discuss the possibility of a judicial settlement conference. During that hearing, the Court informed the parties that the "lengthy" memorandum order detailing its award of summary judgment would not issue until *after* trial. The Court also repeatedly mentioned its prior ruling granting Defendant summary judgment on Plaintiff's discrimination claims. These discussions occurred again on the day trial began, and Plaintiff did not lodge any objection to the fact the Court's supplemental memorandum had not yet been issued. If Plaintiff did not understand the basis for that ruling or wanted more information to understand the impact of the Court's decision on his upcoming trial, Plaintiff had ample opportunity to seek clarification on the Court's summary judgment ruling but failed to do so.

Plaintiff argues the causal relationship between the discrimination claims and the retaliation claim was so great that the absence of evidence at trial on discrimination adversely affected his ability to present his retaliation case to the jury. Plaintiff's retaliation claim relied on the fact he engaged in protected activity by the filing of a claim with the Equal Employment Opportunity Commission ("EEOC"). The parties did not dispute Plaintiff satisfied this element of retaliation. Nevertheless, for purposes of providing context for the jury, the Court permitted

Plaintiff to present testimony and evidence of his perceived discrimination, including the fact he filed the EEOC claim because he thought Defendant was discriminating against him in its hiring practices. The Court also instructed the parties to refer to Plaintiff's discrimination claims as being "resolved," so as to not use a word with a negative connotation that might imply Plaintiff had received an unfavorable decision as to those claims.

The supplemental order addressed only the claims on which summary judgment was granted, and it did not discuss or further explain the Court's ruling on the retaliation claim that proceeded to trial. Plaintiff has not identified how the lack of the Court's supplemental memorandum deleteriously hindered his ability at trial to make arguments or present evidence that was otherwise excluded by the Court. To the extent Plaintiff sought to admit other evidence regarding his discrimination claims, such evidence was not relevant to the sole retaliation claim before the jury. Thus, the Court is unpersuaded Plaintiff's theory of the case or presentation of evidence would have been different had he received a written ruling on summary judgment prior to trial. Even now with the benefit of having received the Court's supplemental memorandum, Plaintiff has not sufficiently demonstrated how the lack of a written ruling impacted presentation of his retaliation claim at trial.

Finally, the Court acknowledges that there was an unusually long delay between the Court's oral ruling and issuance of its written memorandum. However, the Court finds no prejudicial error in this delay. In sum, Plaintiff has failed to establish that this Court's delay resulted in manifest injustice or clear error.

### b. Trial

#### i. Verdict Against the Weight of the Evidence

Plaintiff generally argues that based on the evidence presented at trial, the only reasonable verdict was to find Defendant liable on his claim for retaliation. To prevail on this claim, Plaintiff had to demonstrate by a preponderance of the evidence that: (1) he engaged in a protected activity, (2) Defendant took an adverse employment action against him, and (3) there was a causal link between the two events. Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 281 (4th Cir. 2015) (citing EEOC v. Navy Fed. Credit Union, 424 F.3d 397, 405–06 (4th Cir. 2005) (elements for retaliation under Title VII); Honor v. Booz–Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004) (noting that 42 U.S.C. § 1981 has the same elements)); see also Guessous v. Fairview Prop. Investments, LLC, __ F.3d __, 2016 WL 3615780, at *6 (4th Cir. July 6, 2016) (explaining causation requirement, noting retaliation claims "require the employee to show that retaliation was a but-for cause of a challenged adverse employment action") (quotations and citations omitted).

Plaintiff contends the uncontroverted evidence shows that once Defendant learned of his EEOC filing, Defendant retaliated against him by not allowing him to participate in the internal grievance process, which Plaintiff argues constitutes an adverse action. While this is one interpretation of the evidence, the evidence at trial was not – as Plaintiff argues – uncontroverted. In fact, the parties presented conflicting evidence as to whether Defendant took adverse action, and if so, whether this adverse action was caused by Plaintiff's protected activity.

Defendant presented evidence that it engaged in the internal grievance process with Plaintiff. John Brady, Defendant's employee relations manager, testified that he and two other employees of Defendant, including Willis Young, met with Plaintiff in an effort to resolve his concerns about the alleged discrimination. Mr. Brady attended the meeting at the request of Janet Hamilton after Plaintiff sent Ms. Hamilton a meeting request to address some of his concerns.

During the meeting, which lasted approximately an hour and a half, Plaintiff told Mr. Brady and the others that he felt like he was being discriminated against because he had not been hired for any of the approximately 160 jobs to which he had applied. Plaintiff also mentioned a few positions for which he felt he was more qualified than the applicants selected for hire.

In addition to discussing Plaintiff's discrimination concerns, the meeting attendees also reviewed Plaintiff's human resources file with Plaintiff. Plaintiff also sought advice from Mr. Brady as to how to be a better applicant. Mr. Brady testified that Plaintiff had brought dozens of pages of documents to this meeting, including a document entitled "Mr. Reid's Late Show Top Ten," all of which Mr. Brady construed to be Plaintiff's resume. Mr. Brady testified that the meeting lasted longer than usual because he wanted to provide Plaintiff an opportunity to fully discuss all of his concerns with Defendant's representatives. Mr. Brady contends that at the close of this meeting, Plaintiff announced that he had filed an EEOC charge of discrimination against Defendant. Mr. Brady explained that upon the advice of Defendant's counsel, he did not have any further communication with Plaintiff after the EEOC charge was filed.

Willis Young also attended the May 8 meeting and testified as to what occurred, corroborating much of what Mr. Brady stated in his testimony. Mr. Young also indicated that after the end of the meeting, he felt Plaintiff had had a full opportunity to discuss all of his concerns. The parties also discussed Plaintiff shortening his resume and the information associated with it. Mr. Young testified he did not receive any follow-up communications from Plaintiff regarding his discrimination concerns. Three weeks after the meeting, Plaintiff emailed a revised resume to Mr. Young for his review. Mr. Young explained that because of his workload at the time, he did not have an opportunity to provide feedback to Plaintiff on the revised resume.

In addition to this testimony offered by Defendant, Plaintiff also elicited some testimony that supports the jury's verdict. Janet Hamilton testified as to the procedure used for the internal grievance process. Ms. Hamilton also testified that Plaintiff's email request for a meeting with her was unclear as to whether he was attempting to formally engage in the internal grievance process. Ms. Hamilton also testified that if an employee was unsatisfied with the resolution at a specific level within the internal grievance process, the employee could escalate the process by request. Plaintiff was well-prepared for his examination of Ms. Hamilton, and he was effective in soliciting testimony from her, particularly for a non-attorney.

Plaintiff offered his own testimony that he complied with the internal process, but that Defendant refused to engage. He also presented argument to the jury that Defendant's accommodations were insufficient to comply with the terms of the internal grievance process.

In short, the retaliation claim could have been decided by disbelieving Plaintiff's version of events and accepting Defendant's interpretation and application of the internal grievance process. Plaintiff's credibility was called into question multiple times throughout the trial through impeachment evidence, and the jury could have reasonably disbelieved his testimony in part or in its entirety. Defendant offered evidence that it provided Plaintiff the opportunity to raise his grievances with Defendant's representatives, and Plaintiff participated in this process. Taking the testimony from Defendant's three witnesses collectively, the jury could have reasonably concluded that no adverse action took place because Defendant permitted Plaintiff to engage in the internal grievance process. Even if the jury found adverse action to have occurred, Ms. Hamilton's interpretation of the internal grievance policy, coupled with Mr. Brady's and Mr. Young's testimony, tended to show that Plaintiff's failure to move throughout the elevated stages in the

process was caused by Plaintiff's own inaction. Based on this testimony and other evidence, the jury could have reasonably concluded that Plaintiff failed to avail himself of the process, thus finding no causal link between the filing of the EEOC claim and Plaintiff's participating in the internal grievance process.

Because the jury could reasonably accept Defendant's interpretation of the evidence, Plaintiff's argument that the jury verdict is not supported by the evidence is without merit. Abasiekong v. City of Shelby, 744 F.2d 1055, 1059 (4th Cir. 1984) (holding that trial court should not substitute its own judgment of facts and witness credibility, particularly where the subject matter of trial is easily comprehended by a lay jury).

### ii. Admission of Supplemental Evidence and Exclusion of Damages Evidence

Next, Plaintiff asserts that the Court improperly allowed Defendant to present evidence that was disclosed to Plaintiff a short time before trial, while unfairly prohibiting Plaintiff from presenting his own supplemental evidence as to damages. Both arguments are without merit. In large part, the evidence identified in Defendant's Supplemental Responses to Plaintiff's Discovery Requests (Doc. No. 81-1 pp. 7-9) constituted evidence to impeach testimony likely to be offered by Plaintiff or his witnesses, which Defendant was not required to disclose. See Fed. R. Civ. P. 26(a)(1)(A)(ii) (specifically excluding from disclosure documents if "the use would be solely for impeachment"). Assuming *arguendo* that the supplemental evidence was not "solely for impeachment," the Court finds that Plaintiff's supplemental disclosure of these documents was harmless. See Fed. R. Civ. P. 26(c)(1). Much of the evidence consisted of communications involving Plaintiff or were items such as Plaintiff's medical records that he was able to obtain. Plaintiff never asserted he was unaware of the existence of any of the evidence identified in

Defendant's supplemental disclosure.

Plaintiff contends the Court improperly excluded damages evidence referenced in his supplemental response to Defendant's interrogatory. Unlike impeachment evidence, damages evidence – particularly the computation of each category of damages and supporting documents – must be disclosed under Rule 26(a)(1)(A)(iii). In support of this argument, Plaintiff points to his supplemental response, which contains a lengthy but somewhat generic list of categories of damages and other consequences allegedly caused by Defendant's retaliation. (Doc. No. 84-1, p. 5). Plaintiff, however, never identified in detail the damages sought that the Court excluded, nor does he specify the evidence related to – or his calculation of – those damages that Plaintiff was not permitted to present to the jury. Indeed, the Court allowed Plaintiff and his mother wide latitude to testify as to the mental, physical, and financial impact of Defendant's alleged wrongful action. The Court also permitted, over Defendant's objection, documentary evidence, including photographs, to support such testimony. Finally, the Court notes that because the jury found no liability for Defendant, it did not reach the issues of damages, thus making any alleged error harmless.

### iii. Admission of Prejudicial Evidence

Plaintiff argues the Court erroneously permitted Defendant to present a photograph to the jury that "was more prejudicial than probative." (Doc. No. 84, p. 10). During trial, defense counsel sought to impeach Plaintiff's and his mother's testimony that Plaintiff was emotionally distraught and experienced symptoms of anxiety and depression as a result of Defendant's alleged retaliation. As part of that impeachment, Defendant sought to introduce a picture obtained from Plaintiff's public Facebook account that was posted around the time of the alleged retaliatory conduct. The

picture, dated June 7, 2013, showed Plaintiff and another male smiling with their heads near each other, and noted as a comment made by Plaintiff, "We did look good tonight…LOVE THIS!" (Doc. No. 84-1, p. 11). There was nothing in or otherwise stated about the picture to indicate the relationship between the individuals pictured.

During defense counsel's cross-examination of Plaintiff, Plaintiff answered several questions about the picture, indicating it was possible that a "friend" took the photo, and otherwise authenticated the picture as appearing on his Facebook page during the relevant time period. It was not until defense counsel moved to introduce the picture that Plaintiff lodged an objection. At that time, Plaintiff strongly reacted by arguing the photo was prejudicial, threatening to "walk out" if the photograph was introduced, and voluntarily stating, among other things, "This is a picture of me and my boyfriend." The Court immediately interrupted Plaintiff's outburst and called a sidebar. Plaintiff continued to rant to the jury, forcing the Court to again call Plaintiff over to a sidebar. During the sidebar, defense counsel represented that his sole purpose was to show that Plaintiff appeared "happy" within two weeks of when the alleged misconduct occurred in order to impeach the testimony from Plaintiff and his mother. In response, Plaintiff argued the picture was irrelevant. Although Plaintiff at times talked over the Court, the Court noted the relevance of the photograph as to Plaintiff's alleged damages. Plaintiff continued to accuse defense counsel of having an improper motive and called defense counsel "a snake" multiple times, which prompted the Court to warn Plaintiff to stop using inappropriate, accusatory language or be sanctioned for continuing to do so.

At one point during the sidebar, Plaintiff appeared to withdraw his objection, stating that he wanted the jury to see the photograph. Nevertheless, the Court inquired as to whether Defendant

had other pictures to show the same facial expressions tending to show Plaintiff's emotional state around the time of alleged retaliation. Defense counsel responded it had others, but all with the same person from the photograph already identified, and that he did not have any others that showed Plaintiff appearing happy so close in time to the relevant time period. Plaintiff again informed the Court it should *permit* defense counsel to present the photograph, and the Court noted Plaintiff's withdrawal of his objection.

Immediately after the sidebar and prior to admitting the photograph, the Court, *sua sponte*, provided the jury a limiting instruction advising them the picture was to be considered as evidence for the sole purpose of determining anxiety or emotional distress and not for any other purposes. Plaintiff then testified regarding the picture, but again, in front of the jury, questioned defense counsel's motives for showing the picture. The Court attempted to stop Plaintiff from continuing to confront defense counsel about the picture; however, despite the Court's instruction, Plaintiff continued to make editorial comments about the Court's admittance of the picture, assert accusations against defense counsel, and argue with the Court. The Court directed defense counsel to move the line of questioning on to another topic.

In the instant motion, Plaintiff raises the prejudicial effect of this picture and argues defense counsel engaged in "malicious" and "unethical" conduct by choosing a picture "that would likely insight bias and prejudicial feelings from the jurors." (Doc. No. 84, p. 10). Plaintiff also argues the admission of the photograph warrants a new trial. Id. The Court disagrees for several reasons.

First, Plaintiff withdrew his objection to the picture twice during the sidebar, prompting the Court to admit it. Second, Plaintiff, not defense counsel, voluntarily identified the other individual in the picture as his "boyfriend." Nothing in the picture otherwise indicates any type of

relationship between the two individuals, and prior to Plaintiff's outburst, defense counsel did not ask Plaintiff to describe or otherwise identify the nature of their relationship. In fact, after the picture was admitted, defense counsel referred to the other person as a "friend" when questioning Plaintiff as to the other individual's identity.

Third, Plaintiff has not provided any evidence to demonstrate or call into question any juror's actual or implied "bias and prejudicial feelings." Id. Although Plaintiff does not specifically reference it in his argument, the affidavit of Plaintiff's father, Gregory Arthur Reid, Sr., ("Mr. Reid") references the jury's reaction upon being shown the photograph. (Doc. No. 84-1, pp. 17-18). As more fully explained below, the Court finds Mr. Reid's affidavit to be replete with inaccuracies and wholly incredible. If the discussion of the picture or its admittance had evoked the jury's response as described in Mr. Reid's affidavit or any visible response from the jurors, the Court would have promptly conducted inquiry to the jurors and admonished such conduct. Finally, the Court *sua sponte* instructed the jury of the *exclusive* purpose for which the picture could be considered – evaluating damages. In sum, Plaintiff has not shown how the admission of the photograph was prejudicial to his case, let alone so prejudicial as to warrant a new trial.

### iv.  Jury Instructions

Plaintiff argues the Court erroneously excluded his proposed jury instruction on First Amendment rights. "A district court will be reversed for declining to give a proposed jury instruction only when the requested instruction '(1) was correct; (2) was not substantially covered by the court's charge to the jury; and (3) dealt with some point in the trial so important, that failure to give the requested instruction seriously impaired that party's ability to make its case.'" United

States v. Kivanc, 714 F.3d 782, 794 (4th Cir. 2013) (quoting Noel v. Artson, 641 F.3d 580, 586 (4th Cir. 2011)). Jury instructions are appropriate so long as when construed as a whole and in light of the whole record, the instructions "adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Kivanc, 714 F.3d at 794 (quotation omitted).

Here, Plaintiff asserts the jury should have been instructed that he had a First Amendment right of free speech to criticize Defendant. His proffered instruction generally mirrors the instructions the jury received regarding his claim for retaliation with the exception that Plaintiff's instructions reference engaging in "protected speech" as opposed to engaging in a "protected activity." During the jury charge conference, the Court briefly explained to Plaintiff that he had not asserted a First Amendment claim. Plaintiff affirmatively acknowledged he understood. Without deciding whether this acknowledgement constitutes a waiver to the proposed instruction, the Court reiterates that Plaintiff has never asserted a First Amendment claim in this case. Nowhere in his Complaint, Amended Complaint, or Second Amended Complaint does Plaintiff reference the First Amendment. (Docs. Nos. 1, 4, 27). In fact, Plaintiff's Second Amended Complaint makes clear by specific reference that the "filing of an EEOC charge" served as the basis for his protected activity in the retaliation claim related to the internal grievance process. (Doc No. 27, p. 5). Accordingly, Plaintiff's requested instruction was not correct, and to some extent, was also "substantially covered by the court's charge to the jury" in the retaliation instructions governing his protected activity of filing the EEOC charge. Kivanc, 714 F.3d at 794. This argument is without merit.

### v. Jury Deliberation

Plaintiff raises two issues related to the jury's deliberation. He argues it was error for the Court to provide automatic access to Defendant's electronically-captured exhibits but to not automatically provide the jury with hard copies of Plaintiff's exhibits, which were not electronically captured. Plaintiff also asserts the jury did not deliberate an appropriate about of time. The Court addresses these arguments in turn.

### 1. Exhibits

Plaintiff correctly states that the jury did not have any of his hard copy exhibits in the jury room; however, the jury had *access* to all hard copy exhibits, including all of Plaintiff's evidence. The Court employs an electronic system called JERS,[10] which digitally captures evidence as it is admitted and provides the jury with access to those admitted exhibits using technology in the jury deliberation room. Prior to the start of trial, the parties are required to provide the Clerk of Court with digital files of all exhibits. The Deputy Clerk of Court individually uploads these files to JERS as each exhibit is admitted into evidence. JERS also allows the Court to digitally capture images of exhibits presented using other courtroom technology, including document cameras.

Here, the disk provided by Plaintiff did not contain his proffered exhibits in a format readable on the JERS system, and Plaintiff was unable to produce properly formatted digital files. Additionally, Plaintiff had ongoing computer troubles during the trial, which resulted in the bulk of his evidence being presented using the Court's document camera to display a hard copy of the evidence to the jury, witnesses, and Court. It appears from the limited record before the Court that none of the evidence presented by any party on the document camera was digitally uploaded to JERS. Since this was the method used by Plaintiff to present all of his evidence, the Court

---

[10] JERS is the system name and is short for "Jury Evidence Recording System."

presumes for the sake of argument here that none of his evidence was captured in JERS.

In light of the fact that only some evidence was captured in JERS, the Court's final set of jury instructions specifically informed the jury as to the methods they could use to review the admitted exhibits. The Court explained that the jury deliberation room contained a computer system that enabled them to view some exhibits electronically. The Court also instructed the jury that some paper exhibits were not on the electronic database, and the Court informed jurors that if they wanted to see any of those paper exhibits, the jury simply needed to send a note to the marshal and the Court would provide them hard copy exhibits. The Court did not inform the jury that one parties' exhibits were digitally or not digitally captured, nor did the Court otherwise explain to the jury the cause for the difference in their access to exhibits.

Plaintiff never objected to this instruction. In fact, it appears he approved of the instruction and process. When the jury retired to deliberate, Plaintiff informed the Court that he brought hard copies of *all* of his exhibits that he could provide to the jury if requested. Thus, Plaintiff was aware of the fact that few, if any, of his exhibits were digitally captured on JERS and the procedure in place should the jury want to view his exhibits. The jury never submitted a note requesting to see the hard copy of any exhibits. Plaintiff has failed to show how the Court's processes and instructions, to which Plaintiff acquiesced, resulted in a miscarriage of justice or constituted clear error.

### 2. Length of Time for Jury Deliberations

Plaintiff argues the jury spent an inadequate amount of time deliberating the case. He specifically asserts that after three days of trial and a morning of closing arguments, "It defies logic to suggest that a group of seven reasonable adults could have picked a foreman, analyzed hours of

testimony, reviewed a significant amount of exhibits, read & interpreted the jury instructions and determined a fair verdict in less than 10 minutes." (Doc. No. 84, p. 12). Plaintiff cites to no case law or other authority to support his argument.

The Court's research indicates the Fourth Circuit has long recognized that there is no law requiring a jury to deliberate for a specified amount of time, only that the jury is to engage in conscientious deliberation in reaching their unanimous verdict.

> [The trial judge is unquestionably entrusted with the power to set aside the verdict and award a new trial if there is either misconduct on the part of the jurors or a contemptuous or flippant disregard of their duties in considering a matter submitted to them. However, in the case under consideration, **the plaintiff does not attempt to show any misconduct on the part of the jurors other than the bare fact that they returned a verdict in four minutes**. We know of no rule of law which prescribes how long a jury should be required to deliberate before returning its verdict. Of course, as was observed by the District Judge, the verdict should be the result of conscientious deliberation, but the fact that the verdict was returned within a few minutes does not necessarily show that the jury disregarded this duty, and is not sufficient of itself to justify a new trial.

Segars v. Atl. Coast Line R. Co., 286 F.2d 767, 770 (4th Cir. 1961) (emphasis added) (internal citations omitted).

Similarly, here, Plaintiff has filed to identify any actual incidents of jury misconduct related to the length of time spent on jury deliberations other than the bare assertion that the jury must have decided the case against him prior to officially beginning jury deliberations at the close evidence and instructions. To the contrary, the Court does not agree that the short amount of time for deliberations is indicative of the jury prematurely deciding the case against Plaintiff. Before the case began, the Court instructed the jury:

> . . . . I instruct you that during the trial you are not to discuss the case with anyone or permit anyone to discuss it with you. Until you all retire to the jury room at the end of the case to deliberate on your verdict, you must not talk about this case, even amongst yourselves.

. . . .

> Finally, do not form any opinion until all the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

Plaintiff has failed to provide evidence the jury disregarded these instructions.

The Court also declines to find that the deliberation time, standing alone, is *per se* evidence of other possible misconduct. The case presented to the jury was not complicated. Trial lasted three-and-a-half days, beginning with pretrial motions, jury selection, and opening statements taking the entire first day on Monday, December 7, 2015. The presentation of evidence only took two days – Tuesday, December 8, and Wednesday, December 9 – before the jury heard closing instructions and closing arguments on the morning of December 10, 2015. While several exhibits were admitted, only five witnesses testified. As is the Court's usual custom, the Court read the jury instructions aloud in open court and allowed jurors to follow along with the written version displayed on their screens. There is no requirement that the jurors re-read these instructions again once jury deliberations commence.

The jury was presented with one fairly straightforward cause of action for retaliation and needed to decide no more than two questions, the second of which did not need to be answered if the jury found no liability in question one. The Court has already ruled that the evidence supports the jury's verdict finding no liability. If anything, the jury's swift verdict shows that Plaintiff had little evidence supporting his position. Accordingly, the Court does not find the jury's deliberation of approximately ten minutes in a non-complex case as indicative proof that the jury disregarded their duty of conscientious deliberation.

### c. Misconduct Allegations at Trial

Plaintiff's misconduct arguments do not end with his complaints regarding jury

deliberation time.  He also moves to amend the judgment, or in the alternative for a new trial, based upon allegations of misconduct by essentially everyone, including himself.   Plaintiff requests a new trial because of his own courtroom conduct he contends was a result of physical and emotional stress, defense counsel's misconduct, jury misconduct, and, through submission of his father's affidavit, misconduct by the Court.   While the Court could summarily dismiss all of these arguments as wholly without merit, the Court pauses to briefly address Plaintiff's contentions in an effort to establish a clear record on these baseless claims.

### i.  Affidavit of Gregory Arthur Reid, Sr.

As an initial matter, the Court finds the affidavit of Plaintiff's father, Gregory Arthur Reid, Sr., ("Mr. Reid") to be entirely self-serving, blatantly false, and not credible. Although Plaintiff does not specifically rely on this this affidavit in his motion, it was nevertheless attached as an exhibit to his motion and makes significant allegations of misconduct by defense counsel, the jury, and the Court.  (Doc. No. 84-1, pp. 17-18).  Mr. Reid's embellished descriptions as to what occurred during trial border on fantastical.  For example, he asserts:

> Upon the display of these photos there was a distinct deafening in the courtroom, particularly from the members of the jury; a type of hush that one would expect from an audience that seemed stunned as to what they were observing right before their eyes.  The jurors glanced at one another in a since [sic] of disbelief at what they were witnessing right before their eyes.
> . . . .
> Throughout the trial, the Defendant's counsel skillfully managed to taunt the Plaintiff, through their facial expressions and obvious taunting of the plaintiff.  This fact made it clear that Defendant's intent was to not make these proceedings was proceedings [sic] about the Plaintiff's charge of retaliation, but instead carefully crafted case of character assassination.
>
> Throughout the trial the jury was noticeably nodding whenever the Defense made mention of the Plaintiff's past employment troubles, the perceived lifestyle of the plaintiff, the seemingly disorganization and the constant emotional outbreaks made by the plaintiff rather than the merits of the case. . . .

. . . .
> There were several small meetings that the judge would call during the course of the trial. During these side bar conversations the Judge was scolding the plaintiff, perhaps his misinterpretations of some legal precedent that only an attorney would be aware of. From my view in the gallery, these conversations came across as reprimands direct at the plaintiff.
>
> During these sidebars, the jury would be chuckling as if they were witnessing a father scolding his child.
> . . . .
> I noticed that after everyone was dismissed, the judge and the defense attorney huddled around the bench, smiling of satisfaction as to which I interpreted were smiles of that one would see on the golf course after a team had successfully defeated their opponent in an overwhelming victory.

(Doc. No. 84-1, pp. 17-18). None of these accusations or supposed observations were brought to the Court's attention at any time during trial. Moreover, these accusations improperly reflect what actually occurred in the Court's presence. The Court never observed defense counsel "taunting" Plaintiff, nor did the Court observe the jury act inappropriately during sidebar. If it had, the Court would have issued an appropriate instruction regarding appropriate courtroom conduct. Indeed, on at least one occasion, the Court cautioned defense counsel after she verbally reacted in the midst of Plaintiff making argument to the Court. This occurred while the jury was not present in the courtroom. Defense counsel apologized, and there were no further incidents.

The Court also finds Mr. Reid's accusation about the Court's conduct false. During sidebars, the Court was cautious of using a low voice and appearing unbiased. On several occasions, it was *Plaintiff* and not the Court who engaged in conduct during a sidebar that could have drawn attention from the jury. For example, the Court had to frequently remind Plaintiff to whisper so that the jury would not hear him. In an effort to distract the jury's attention, the Court advised the jury, as it typically does, during one of the first sidebars that they could stand up and stretch during sidebars. Furthermore, the Court instructed the jury immediately prior to retiring

32

to deliberate, "The law, as indeed it should, requires the presiding judge to be impartial. Therefore, do not assume from anything I may have done or said during the trial that I have any opinion concerning any of the issues in this case." Mr. Reid's accusations are meritless. In sum, the Court finds Mr. Reid's affidavit not credible evidence for purposes of this Order.

### ii. Other arguments of misconduct

Having disregarded Mr. Reid's affidavit, the Court now turns to Plaintiff's arguments of alleged misconduct. As to defense counsel misconduct, Plaintiff contends that through discovery, including Plaintiff's deposition, defense counsel learned what issues were sensitive to Plaintiff and unethically used this information to provoke negative reactions from Plaintiff during trial. The cases cited in Plaintiff's brief appear irrelevant to Plaintiff's argument here. (See Doc. No. 84, p. 12).

Nothing in the record indicates unethical conduct or bad faith by defense counsel. As a whole, defense counsel treated Plaintiff with respect throughout the court proceedings, including the judicial settlement conference and trial, despite Plaintiff's oftentimes disrespectful behavior towards defense counsel. For example, when Plaintiff repeatedly called defense counsel a "snake," defense counsel remained calm and sought the Court's intervention, as opposed to engaging in an argument with Plaintiff. Other examples include Plaintiff's use of sarcasm and making snide comments in responding to defense counsel's cross-examination questions, or other times when Plaintiff would refer to defense counsel by his first name "Dean," as opposed to "Mr. Shatley." In large part, defense counsel raised no objection to this conduct. So as to avoid drawing attention to Plaintiff's disrespectful conduct, the Court did not correct him in the jury's presence unless Plaintiff became combative and non-responsive to counsel's questions, or waded into argument to

the jury.  Moreover, the Court is unaware of anything illegal or unethical in exposing an opposing

party's or witness's vulnerability at trial.  Even if defense counsel intentionally sought to evoke an

emotional response during Plaintiff's testimony, such tactic did not fall outside of ethical

boundaries.

Plaintiff makes a far-fetched argument in support his allegations of jury misconduct.   He

contends that the Facebook picture shown to the jury displayed the website address for his personal

Facebook page.   Plaintiff asserts, "The Plaintiff believes that after being provided with this

information, jurors went on his Facebook to seek additional information, which adversely affected

their opinion of him and his credibility."  (Doc. No. 84).   It does not appear from Plaintiff's

statements that he made any efforts to make his social media accounts and associated content

private or otherwise unavailable for public viewing.    Nevertheless, Plaintiff offers absolutely no

evidence that this occurred.  Moreover, the Court repeatedly informed the jury throughout the

proceeding that they were not to conduct any research on their own and that their decision in this

case must be based solely on the evidence presented in the courtroom.   The Court's jury

instructions issued as soon as the case began stated:

> . . . . Do not read or listen to anything touching on this case in any way — that
> includes newspaper articles or television or radio reports on this case. If anyone
> should try to talk to you about it, bring it to my attention promptly.
>
> . . . . Do not try to do any research or make any investigation about the case on your
> own.
>
> . . . .
>
> Anything you may have seen or heard outside the courtroom is not evidence and
> must be disregarded.  You are to decide the case solely on the evidence presented
> here in the courtroom. . . . .

Further, the Court's jury instructions at the close of evidence specifically provided:

During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as the telephone, a cell phone, smart phone, iPhone, Blackberry or computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, LinkedIn, YouTube or Twitter, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me as soon as you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

Plaintiff provides no evidence the jury disregarded these instructions. The allegations of jury misconduct are without merit.

Plaintiff also asserts that the unusual amount of physical and emotional stress of trial caused him to "engage in atypical behaviors; behavior which likely affect the jury's perception of the Plaintiff's character and credibility as a witness." (Doc. No. 12). Plaintiff again provides no legal support for this argument, and his own self-serving example – that Plaintiff "rarely looked up" while he was testifying under cross-examination – is unpersuasive to the Court. To the extent Plaintiff's courtroom behavior influenced the jury's verdict and its consideration of his testimony and evidence, the Court finds that such conduct could be considered by the jury for any witness, not just Plaintiff. This argument fails to support a new trial.

### d. Summary Judgment Ruling

Although the Court ruled on Defendant's Motion for Summary Judgment on November 12, 2015, well in advance of trial, the Court did not issue its written memorandum opinion until February 12, 2016. (Doc. No. 91). Because the supplemental memorandum opinion did not issue until after Plaintiff had filed the instant motion, the Court permitted him to file a supplemental brief addressing the issues from the Court's supplemental memorandum opinion. (See Text Only Order February 19, 2016, granting Doc. No. 92). In his supplement, Plaintiff essentially argues the Court overlooked his evidence, improperly deemed the bulk of his evidence inadmissible, and wrongly conducted a credibility determination to weigh the evidence in its summary judgment ruling.

Plaintiff contends he presented a substantial amount of documentation in a form admissible for trial, which the Court erroneously disregarded. The Court's supplemental memorandum explained that it did not consider Exhibits 2, 7, 9, 11, 12, 18, 20, 21, 25, and 28 as being "unauthenticated, fraught with hearsay, and mostly irrelevant . . . ." (Doc. No. 91, p. 13). It is well-settled in our jurisprudence the Court cannot consider hearsay evidence in ruling on summary judgment. Maryland Highways Contractors Ass'n, Inc. v. State of Md., 933 F.2d 1246, 1251-52 (4th Cir. 1991) ("[S]everal circuits, including the Fourth Circuit, have stated that hearsay evidence, which is inadmissible at trial, cannot be considered on a motion for summary judgment.") (citing Rohrbough v. Wyeth Laboratories, Inc., 916 F.2d 970, 973–74 n. 8 (4th Cir. 1990); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990); Randle v. LaSalle Telecommunications, Inc., 876 F.2d 563, 570 n. 4 (7th Cir. 1989); Pink Supply Corp. v. Hiebert, Inc., 788 F.2d 1313, 1319 (8th Cir.1986)).

In an attempt to overcome this rule, Plaintiff argues "many of the documents deemed inadmissible by the Court were meant to serve as a tool to refresh the declarant's memory (*i.e. publication of photos on online employment websites*), were put forth for the Court to take notice on issues relating to the uncontroverted facts, or were submitted for impeachment purposes." (Doc. No. 93, p. 4). Plaintiff, both at the time of summary judgment and now, fails to identify who among Defendant's witnesses would have provided the testimony during which he intended to use this excluded evidence to refresh recollection or impeach. See Fed. R. Evid. 803(5) ("Recorded Recollection. . . . If admitted, the record may be read into evidence but may be received as an exhibit only if offered by an adverse party."); Fed. R. Evid. 613(b) ("Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the witness about it, or if justice so requires."). In fact, in large part, other than attaching a voluminous amount of documents to his opposition to summary judgment and providing bare citation to exhibits throughout his brief, Plaintiff failed to explain or otherwise argue his exhibits' relevancy to his claims. See Muhammad v. Giant Food Inc., 108 F. App'x 757, 764 (4th Cir. 2004) (concluding that "passing mention" of issues to the district court, without specific argument as to what the evidence would have established, was insufficient to preserve issues for appeal) (citing Ritchie v. Glidden Co., 242 F.3d 713, 723 (7th Cir. 2001) (explaining that "a court is not required to scour the record in search of evidence to defeat a motion for summary judgment") (internal quotation marks omitted))).

In addition to failing to establish how these documents were relevant or would be admissible at trial, Plaintiff has likewise failed to show how the Court's ruling on summary

judgment would have been different had the Court considered these exhibits. For example, although the Court excluded Exhibit 7, which included a compilation of unauthenticated materials related to Plaintiff's education to obtain his master's degree, the substance of those documents was considered by the Court in its ruling and in its discussions of Plaintiff's qualifications for the positions sought. Plaintiff has not shown error in the Court's exclusion of certain exhibits to his opposition to summary judgment, nor how has he clarified how the Court's ruling would be different absent such error.

Plaintiff also identifies a demonstrative exhibit (Doc. No. 68) that he presented during the hearing, which he contends the Court failed to consider in its ruling. (See Doc. No. 93, p. 9). To the contrary, the Court reviewed this document at the hearing and again as part of its deliberations on summary judgment. The fact it was not cited in the Court's supplemental memorandum is not indicative of the Court's review. Indeed, much of this "demonstrative exhibit" constitutes additional legal authorities, not evidence, to supplement Plaintiff's arguments, all of which the Court considered. To the extent it sought to respond to Defendant's objections to Plaintiff's evidence, such argument again failed to cure the hearsay, authentication, and relevancy problems found by the Court.

Plaintiff also contends the Court heavily relied on technicalities in the Federal Rules of Evidence, thus placing him – as a *pro se* party – in an unfair position to oppose Defendant's motion. The Court disagrees. Upon the filing of Defendant's motion for summary judgment, the Court, as it always does in cases involving *pro se* parties, sent Plaintiff a notice specifying the burden he carried in responding to Defendant's motion. (Doc. No. 59). Additionally, the Court conducted a hearing on the motion for summary judgment, giving Plaintiff another opportunity to present

additional argument and, to some extent, additional evidence to support his opposition. Despite the admissibility issues presented by Plaintiff's proffered evidence, the Court nonetheless gave Plaintiff the benefit of the doubt on a large portion of his exhibits and considered the merits of the arguments.

Plaintiff also contends the Court improperly weighed the credibility of the evidence. To the contrary, the Court, as the supplemental memorandum makes clear, considered the evidence in the light most favorable to Plaintiff, as the nonmoving party. Adhering to this well-established principle of law does not mean the Court must consider inadmissible evidence, even if it could possibly bolster a party's argument. Much of Plaintiff's argument to this point suggests the Court found his evidence not credible; when instead, as explained above, the evidence on which Plaintiff wanted to rely was simply not properly before the Court.

The bulk of Plaintiff's remaining arguments are restatements of arguments previously set forth and rejected by the Court. Although Plaintiff, as the nonmoving party, is entitled to all justifiable inferences, he nevertheless carries the ultimate burden of proof to establish his discrimination and retaliation claims. The Fourth Circuit has explained, "The obligation of the nonmoving party is 'particularly strong when the nonmoving party bears the burden of proof.'" Hughes v. Bedsole, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990)).

Instead of admissible evidence, Plaintiff heavily relied on speculation in arguing his claims should withstand Defendant's motion for summary judgment. Plaintiff's evidence to oppose Defendant's motion for summary judgment rested on his own beliefs and opinions regarding his qualifications for the positions sought. For the reasons stated in the Court's order, such self-

serving statements were insufficient to establish a prima facie case. (Doc. No. 91, pp. 15-16).

Likewise, Plaintiff's evidence did not cast sufficient doubt on the genuineness of Defendant's articulated non-discriminatory and non-retaliatory reasons in rejecting Plaintiff's job applications. The "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to avoid summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Moreover, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the jury when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted); see also Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005) (noting judgment as a matter of law is warranted where "a reasonable jury could reach only one conclusion based on the evidence," or when "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture.").

Put simply, Plaintiff's case failed because a litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted). As explained in the Court's supplemental memorandum on summary judgment, Plaintiff's evidence was insufficient to make a prima facie showing of discrimination or retaliation, and he had no evidence to demonstrate "a genuine dispute of material fact on the question of pretext sufficient to make [Defendant's] proffered justifications a triable issue." Guessous, __ F.3d at ___, 2016 WL 3615780, at *7 (4th Cir. July 6, 2016) (citing Foster v. Univ. of Md.-E. Shore, 787 F.3d 243, 254 (4th Cir. 2015); King v. Rumsfeld, 328 F.3d 145, 154 (4th Cir. 2003) (Gregory, J., dissenting)). The Court will not

disturb its summary judgment ruling.

### III.    CONCLUSION

As alluded to in the Court's supplemental memorandum on summary judgment, the Court has attempted throughout all proceedings in this matter – as it does in every matter involving a *pro se* party – to ensure a full opportunity to be heard and to seek resolution in this case based on the merits and not the technicalities of the law.  Based on the evidence and applicable law, the Court rejected Plaintiff's claims of discrimination and one claim for retaliation on summary judgment, and the jury rejected Plaintiff's surviving claim for retaliation following a trial.  The Court has detailed in this Order the multiple reasons why neither the Court's summary judgment ruling nor the jury's verdict should be disturbed.

IT IS THEREFORE ORDERED that Plaintiff's "Motion to Alter or Amend Judgment; New Trial . . . ," (Doc. No. 84), is DENIED.  Plaintiff's Motion for Transcripts (Doc. No. 83) is DENIED WITHOUT PREJUDICE as moot.

IT IS SO ORDERED.

Signed: July 28, 2016

Frank D. Whitney
Chief United States District Judge